(C. D. 336)

BALLESTER HERMANOS *v.* UNITED STATES

United States Customs Court, Third Division

(Decided May 13, 1940)

*Miguel A. Munoz* for the plaintiff.
*Webster J. Oliver,* Assistant Attorney General (*Richard F. Weeks* and *John J. McDermott,* special attorneys, and *Joseph A. Howard, Jr.,* junior attorney), for the defendant.

Before CLINE, EVANS, and KEEFE, Judges; CLINE, J., not participating

EVANS, Judge: This is an action against the United States wherein the importer seeks to recover certain sums of money claimed to have been illegally exacted as customs duties on an importation of garbanzos entered at the port of San Juan, Puerto Rico, on which the collector of customs assessed duty at the rate of 1¾ cents per pound under paragraph 769 of the Tariff Act of 1930. Plaintiffs claim that the merchandise is properly dutiable under the provisions of paragraph 731 of the same act at the rate of 10 per centum ad valorem.

The provisions of the statute cited are as follows:

PAR. 769. Peas and chickpeas or garbanzos: Green or unripe, 3 cents per pound in the case of peas, and, in the case of chickpeas or garbanzos, 2 cents per pound; dried, 1¾ cents per pound; split, 2½ cents per pound; prepared or preserved in any manner, 2 cents per pound on the entire contents of the container.

PAR. 731. Screenings, scalpings, chaff, or scourings of wheat, flaxseed, or other grains or seeds: Unground, or ground, 10 per centum ad valorem: *Provided,* That when grains or seeds contain more than 5 per centum of any one foreign matter dutiable at a rate higher than that applicable to the grain or seed the entire lot shall be dutiable at such higher rate.

The question is whether or not this commodity is to be assessed under the provision of the statute as garbanzos, dried, or as screenings, scalpings, chaff, or scourings of grains or seeds, unground. In the argument counsel for the plaintiffs asserts that the commodity imported consists of screenings of garbanzos.

Screenings are a well-known commercial product and are bought and sold in the markets of this country in large quantities. See *Consolidated Elevator Co.* v. *United States,* 8 Ct. Cust. Appls. 267,

255

T. D. 37526, at page 268. The term "screenings" is defined by Webster's New International Dictionary, Second Edition, as follows:

2 pl. a Material which has been screened.  b Refuse after screenings; specif., the small imperfect grains, weed seeds, and other foreign material having feeding value, separated in cleaning wheat, rice, barley or other cereals.

In the summary of Tariff Information, 1939, Schedule 7, page 1218, we find the following description and uses given, to wit:

Screenings, chaff, and scourings are by-products obtained by grain elevators, millers, and also from the farm thresher.  They consist of foreign grains, under-developed kernels; seeds from weeds, pigeon grass, wild oats, wild buckwheat, etc.  They are used principally for live stock and poultry feed, either directly or after going through various stages of separation, or after being mixed with molasses or other feeds.  In the large grain centers some companies specialize in the purchase, further separation, and distribution of elevator screenings.

A witness who had been in the business of handling and importing garbanzos for a long period of time stated that garbanzos are cleaned and graded by the use of a machine operated by electricity which contains a number of screens of different size mesh, and that when the garbanzos are poured into the top (hopper) they pass through and the large ones run off of certain screens, the smaller ones pass through. Apparently as many grades may be made as the operator of the machine may desire simply by having more screens.

Illustrative exhibits of screened garbanzos graded as follows were received in evidence: those running 38 to 40 grains of garbanzos to the ounce, Illustrative Exhibit 1; 40 to 44, Illustrative Exhibit 2; 44 to 46, Illustrative Exhibit 3; 48 to 50, Illustrative Exhibit 4; and 36 to 38, Illustrative Exhibit 5.  There is no proof that the illustrative exhibits offered in evidence are standard.  They represent nothing more than the selector's groupings.  As a matter of fact, it appears from the case of *H. B. Thomas & Co.* v. *United States*, T. D. 43504, 56 Treas. Dec. 131, which involved the classification of certain broken or partly ground garbanzos, that the court from the evidence there produced stated as follows:

Certain sieves are noticed in this machine by which two grades of garbanzos are separated, the monstras grade, containing an average of from 40 to 44 grains per ounce, and the standard grade, containing an average of 48 to 54 grains per ounce.  After these two grades are separated there is a residue of screenings, which was imported after having been ground.

In that case the court was dealing with a ground commodity which contained a certain amount of chaff, extraneous matter which is found in screenings.  We have no such situation at hand.  The imported commodity consists of garbanzos cleaned and dried and therefore falls within the provisions of the paragraph of the tariff act under which it was taxed by the collector.

It would appear from the well-prepared brief of the importer, particularly from his citation of the definition of the term "screenings"

that he considers anything that has been screened to fall under that term. His citation from *Corpus Juris* and the definitions he has quoted bear this out.

If we would apply that theory to the instant merchandise, then all grades of garbanzos that have been passed through the machine for grading and cleaning would be known as screenings.

We quite agree with his statement that the case of *Fernando Badrena* v. *United States*, T. D. 49333, is not an authority for a definition of screenings of garbanzos, but it authoritatively settled the question of the classification of the imported article in that case because the majority of the judges held that importation to be garbanzos and not screenings.

The product in the instant case, Exhibits 6 and 7, as the testimony shows, consists of small garbanzos grey-bluish in color, dried, without any foreign substance intermingled therewith, so far as the naked eye can discern. There appear to be few if any broken garbanzos present. Since the importation consists entirely of garbanzos, even though small, and, according to the testimony, inferior in quality, they do not fall within the description of screenings even though they might constitute the latest or last grade of garbanzos, there being no other foreign seeds such as are always present in screenings as commercially sold.

We therefore overrule plaintiffs' claim and sustain the classification of the collector as dried garbanzos at 1¾ cents per pound under paragraph 769, *supra.* Judgment will be rendered accordingly. It is so ordered.