(C. D. 755)

IMPORTERS COMMISSION CO., INC. *v.* UNITED STATES

United States Customs Court, Third Division

(Decided March 31, 1943)

*Strauss & Hedges; Barnes, Richardson & Colburn* (*J. Bradley Colburn* of counsel) for the plaintiff.
*Paul P. Rao,* Assistant Attorney General (*James F. Donnelly* and *Alfred A. Taylor, Jr.,* special attorneys), for the defendant.

Before CLINE, KEEFE, and EKWALL, Judges

CLINE, Judge: This is a suit against the United States in which the plaintiff seeks to recover a part of the duty assessed on merchandise

invoiced as "Extracted Soya Bean Oil Cake Meal" imported from Dairen, Manchuria. The appraiser's advisory classification on the invoice is "Fine bolted flour from soy beans" and duty was assessed at the rate of 35 per centum ad valorem under paragraph 775 of the Tariff Act of 1930. Several claims are made in the protest but counsel for the plaintiff abandoned all the claims except the one wherein it is claimed that the merchandise is dutiable at ⅗₀ of 1 cent per pound as "soy bean oil cake and soy bean oil-cake meal" under paragraph 730. The pertinent part of the paragraph under which the merchandise was classified reads:

PAR. 775. Vegetables * * * if reduced to flour * * *; soy beans, prepared or preserved in any manner; * * * 35 per centum ad valorem; * * *.

At the trial a sample representing the imported merchandise was admitted in evidence by consent of the parties and marked exhibit 1, and request was made to have the same referred to the United States laboratory for a quantitative and qualitative analysis and a determination of the identity of the product. At a subsequent hearing, the report of the analysis was received in evidence and marked exhibit 2. The report reads as follows:

The sample is a soya bean meal or defatted soya bean flour having the following composition:

| | |
|---|---|
| Water | 7. 3% |
| Mineral matter | 6. 4% |
| Fat | 3. 5% |
| Protein | 53. 6% |
| Nitrogen free material | 26. 4% |
| Crude fiber | 2. 8% |

Miss Bella Kahn, a chemist in the United States laboratory who made the above analysis, testified that in the course of her experience she had analyzed soybean oil-cake meal half a dozen times and was familiar with it. Concerning the report, exhibit 2, she testified as follows:

Q. Would it be equally correct in the report you have made of the analysis of the merchandise at bar to say that the sample is a soya bean meal or soya bean oil cake meal?
*　　*　　*　　*·　　*　　*　　*
A. Yes, I could have said oil cake meal.
Q. It would be equally true as a statement, oil cake meal.—A. Correct.

On cross-examination the witness testified that the statement in the report is correct wherein it says that the merchandise is soybean meal or defatted soybean flour; that she found the crude fiber to be 2.8 per centum and the literature usually differentiates meals and flours by saying that the flours are prepared by dehulling the soybeans and when soybeans are dehulled the crude fiber is usually lower, the crude fiber being more prevalent in the hull than in the total bean; that

Winton gives the crude fiber in oil-cake meal as 4.8 per centum; that the crude fiber in flour is 3.7 per centum and she found 2.8 per centum, which would indicate that the soybean may have been dehulled; that the usual flours have not been defatted and the literature usually says that flour has about 20 per centum of fat; that she could not have called it a flour, but did say it was a defatted flour.

The defendant called Mr. Charles W. S. Curley who testified that he is the examiner who made the advisory classification and classified the merchandise as soybean flour; that he considered the merchandise to be soybean flour as distinguished from meal because of the fineness of it and the general appearance of it.

The next witness called by the defendant was Mr. William C. Holzhauer who is a broker dealing in soybean products. He testified that he was connected with A. E. Staley Manufacturing Co. of Decatur, Ill., the business of which firm is processing corn and soybeans, and that he had 10 or 11 years of experience with such merchandise; that he deals in soybean flour which resembles exhibit 1 very much. The witness was shown exhibit 2, the report of analysis, and he testified that the specifications are similar to those in Staley's soybean flour, number 2, with several variations. When asked to compare the two products, he testified as follows:

Q. Will you please explain the variations or tell us wherein the variations occur?—A. Well, I would have to refer to Staley's standard analysis for number 2 flour, and here we should make a direct comparison, I would say. Staley's shows a moisture of 5 per cent, whereas this one shows a moisture content marked here as water, of 7.3.

Staley's protein is 50.00, and this analysis shows 53.6.

Staley's fat content is 7.50, and this analysis shows 3.5.

Staley's shows an ash content of 5 per cent. This analysis doesn't show a separate item for ash.

Staley's shows a fiber content of 2.5; and this reads crude fiber, 2.8.

Staley's shows carbohydrates, not including fiber, of 30.00; and this analysis shows what is commonly recognized as the equivalent, but under the title, nitrogen free material, 26.4.

The other items are not related. This shows calories. No calories here. It is not related.

Q. What is—you have referred to Staley's number 2. What is Staley's number 2?—A. Staley's number 2 flour is a flour made after most of the oil has been removed from the bean.

Q. Do you sell it under any particular name or designation?—A. Just Staley's soy flour number 2.

Q. I direct your attention to the fat content of the merchandise at bar, and ask you whether or not it differs materially from the fat content of Staley's number 2 soy flour?—A. It is probably one of the most noticeable differences of the analysis.

Q. Is the difference upwards or downwards, that is——A. Staley's oil content is approximately twice as great as this material in Exhibit 2.

The witness produced a box containing Staley's number 2 soy flour and it was admitted in evidence and marked illustrative exhibit A.

The witness was asked to explain the physical differences or physical similarities in the two products in exhibit 1 and illustrative exhibit A, but objection of counsel for the plaintiff, on the ground that the court is the best judge for the determination of that point, was sustained.

On cross-examination the witness testified that the fat content in such product has nothing to do with the quality; that the quality of the flour depends on "the condition of the flour according to its most excellent, perfect condition, and any variations due to deterioration, and so forth"; that the analysis is not the result of the manufacturing process but depends on the grade of beans or the particular condition of the crop that year; that there are slight variations in the different elements in the analysis from year to year but the percentage of vari-ation would be small and would not reach the limits represented by the difference between the analysis in exhibit 1 and the Staley analysis; that he would not sell exhibit 1 as Staley's soybean flour number 2, because he is selling the product of one manufacturer and there is no connection between their product and some other manufacturer's product; that typical analyses supplied by manufacturers of soy flour in the United States are identical if the flour is made by the same process, but there are two common processes used and the different processes give different analyses; that the product of other manufacturers would differ as much from exhibit 1 as Staley number 2 does.

On redirect examination the witness explained the different methods of removing the oil from the soybeans as follows:

R. Q. Now, on cross-examination you were asked how many methods there are of making soy flour. I believe you stated there are two.—A. That is right.

R. Q. Will you please tell us what these methods are?—A. One method is to extract the oil from the soy bean by passing the beans through rollers and squeezing the oil out. By this method there is approximately 7 per cent oil left in the mashed bean as it passes through the rolls. By the other process——

R. Q. Just a moment. Does Staley use that process?—A. That is Staley's process, and is called the expeller process.

R. Q. And what is the other process about which you——A. And the other process is to extract the oil by the use of solvents, and is known as the solvent method; and that method can be used to extract down to one-half of 1 per cent or thereabouts of the oil. However, by that method you can also leave a greater amount than one-half of 1 per cent according to your own wishes.

In *Soyolk Co.* v. *United States*, 63 Treas. Dec. 161, T. D. 46125, a commodity known under the trade name of "Soyex" was classified under the provision for "soya beans, prepared." Some of the merchandise was imported under the Tariff Act of 1922 and was classified under paragraph 773 of that act and some was imported under the Tariff Act of 1930 and was classified under paragraph 775 of the latter act. The importers claimed the merchandise imported under the Tariff Act of 1930 to be dutiable as "soy bean oil-cake meal" at ³⁄₁₀ of 1 cent per pound under paragraph 730, which is the same as

the claim made in this case. The merchandise imported under the Tariff Act of 1922 was claimed to be dutiable at 20 per centum ad valorem as a nonenumerated manufactured article under paragraph 1459. In that case the merchandise was a product made from soybeans by heating, chilling, and cutting in order to remove the hulls, the resultant thereof being submitted to a grinding process wherein the pieces of soybean were disintegrated by rapid rotation to a powder and then screened through a centrifugal sifter. The court quoted the following definitions from the Standard Dictionary:

  *flour.* 1. The ground and bolted substance of wheat.
  2. The finely ground substance of any cereal, usually as separated from the husk.
  *meal.* 1. Comparatively coarsely ground grain.
  3. A powder produced by grinding; any powdery meal-like material.

In deciding the case, the court said:

  The only witness called stated that the imported commodity is still soya beans. If it is soya beans it is not soya-bean flour but soya beans, prepared, because, to quote the witness, it has been submitted to a process "of reduction by grinding."

  Upon the record made we are of the opinion that the plaintiff has not overcome the presumption of correctness attaching to the collector's classification.

In *John H. Faunce, Inc.* v. *United States*, 65 Treas. Dec. 361, T. D. 46925, the court held that soybean flour was dutiable under the provision for prepared soybeans under paragraph 775 of the Tariff Act of 1930. In that case, however, the issue was not the same as that in the case herein involved because the plaintiff claimed that the merchandise was dutiable at 20 per centum ad valorem as a nonenumerated manufactured article under paragraph 1558.

In *Frank P. Dow Co. (Inc.)* v. *United States*, 58 Treas. Dec. 436, T. D. 44328, the court held that a fine powder or dust which was collected from the air during the grinding of soybean oil cake was free of duty under the provision for "oil cake meal" in paragraph 1629 of the Tariff Act of 1922. The merchandise in that case was classified by the collector as a nonenumerated manufactured article under paragraph 1459 and the provision for "soya beans, prepared" in paragraph 773 was not under consideration. The court said that the merchandise was not "the finer portion of meal which is separated by bolting and therefore is not comprehended within the common definitions of flour" and that "Congress, when providing for the free entry of oil cake, did not distinguish between the degree of fineness of the meal covered by paragraph 1629, and it must then include meal of all kinds, whether coarse or finer."

From a review of the decisions above cited, it is apparent that the distinction between soybean oil-cake meal and flour depends on whether or not the product has gone through a bolting process. The appraiser's advisory notations on the invoice, which were adopted by the collector, are "fine bolted flour from soybeans." There is no

oral testimony in the record to dispute that statement and the court is unable to determine, from a mere examination of the sample in exhibit 1, whether or not the commodity is the result of a bolting process or some other process used to separate the fine powder from the meal. Illustrative exhibit A is an illustration of soybean flour. The court has compared that exhibit with exhibit 1 and is unable to determine any difference in the physical characteristics of the two commodities. They have the appearance of being identically the same product.

By applying the principles announced in *Soyolk Co.* v. *United States, supra,* and *John H. Faunce, Inc.* v. *United States, supra,* we hold that the commodity is "soy beans, prepared," within the intent of that provision in paragraph 775. The plaintiff contends, however, that it is more specifically provided for as "soy bean oil-cake meal" in paragraph 730 and thus assumes the burden of proving that it is a meal as distinguished from a flour, but no evidence was introduced tending to show how the product was produced.

We are of opinion that the chemical analysis of the commodity does not establish that it is a meal as distinguished from a flour. It appears that there are different grades of soybean flour having different chemical constituents, depending on the character of the soybean crop from year to year and also on the method of extracting the oil from the soybeans. Flour may have the same chemical constituents as the meal from which it was extracted. A chemical analysis may determine whether a product is made from the whole beans or from the meat of the beans or it may determine whether the oil was removed in whole or in part from the beans before the product was ground, but it appears from the decisions that the only way to determine that such a product is a meal as distinguished from a flour is to show that it is not the fine powder separated from the meal by a bolting process or some other method.

We are of opinion that the plaintiff has failed to overcome by evidence the presumption of correctness attaching to the collector's decision. The protest is overruled. Judgment will be entered in favor of the defendant.