(C. D. 879)

H. M. GIDDEN v. UNITED STATES

United States Customs Court, Third Division

(Decided September 22, 1944)

*Barnes, Richardson & Colburn* (*J. Bradley Colburn* of counsel) for the plaintiff.
*Paul P. Rao,* Assistant Attorney General (*Harold L. Grossman,* special attorney), for the defendant.

Before CLINE, KEEFE, and EKWALL, Judges

CLINE, Judge: This is a suit brought by the plaintiff against the United States for the purpose of recovering a part of the duty assessed on merchandise described on the entry as "ground screenings from chickpeas." The collector filed a memorandum with the protest in which it is stated that the merchandise was classified as "vegetable reduced to flour" and duty was assessed at 35 per centum ad valorem under paragraph 775 of the Tariff Act of 1930. The pertinent parts of that provision read as follows:

PAR. 775. Vegetables (including horseradish), if cut, sliced, or otherwise reduced in size, or if reduced to flour   *   *   *   35 per centum ad valorem;   *   *   *.

The plaintiff relies upon the claim that the merchandise is dutiable at 5 per centum ad valorem under paragraph 731, as modified by the trade agreement with Canada, T. D. 49752. That provision reads as follows:

PAR. 731 [As modified by the trade agreement with Canada, T. D. 49752]. Screenings, scalpings, chaff, or scourings of wheat, flaxseed, or other grains or seeds: Unground, or ground_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _5% ad val.

At the trial, the plaintiff called Mr. Alexander Greenberg, who is the miller for the importing firm. The witness testified that for 20 years he has had charge of grading and cleaning peas imported from Mexico

by his firm; that the particular shipment herein involved, consisting of 7,000 tons of field run chick-peas, was unloaded at the free zone at New York; that he had charge of unloading the boat at the dock, cleaning the chick-peas and separating the various sizes in the free zone, and, after the shipment had been cleaned, he had left approximately 40 tons of screenings which consisted of broken pieces of chick-peas, foreign seeds, balls of clay, chaff, and broken pieces of the vines; that he took a small sample, consisting of a few pounds of the screenings, and broke it up in a hammer mill; that he took the sample so treated, together with the original sample, to Examiner Curley at the appraiser's office and asked him what the rate of duty on the product would be and was told that it would be 5 per centum ad valorem; that thereafter he ran the 40 tons of screenings through the hammer mill, which crushed the product, and put the screenings so treated into 396 bags, which were subsequently sold to a feed man, Mr. Charles Schaefer, for $27.50 per ton; that a sieve having openings one-sixteenth of an inch in diameter is a part of the hammer mill, but the product was not subjected to any bolting process; that after being treated in the manner described, the screenings were withdrawn from the free zone and duty was paid thereon; that, according to his experience of 20 years, the imported merchandise withdrawn was a meal; that it was originally screenings but it was broken up into a meal; that in the first operation of cleaning the shipment as originally received, he extracted four separate sizes of chick-peas. After examining exhibit 1, the witness testified that it is not flour, basing his opinion on the fact that he could see some broken particles in it which were not chick-peas but were probably the skin of a bean.

The defendant called Mr. Herman Arrow, who is a well-qualified chemist employed in the customs laboratory in the appraiser's office at New York and who testified that he analyzed a sample of the importation in the instant case and determined that it consisted of chick-peas. The witness stated that he ground a part of the sample into powder, and, after cleaning the mill, he ground two other samples which consisted of chick-peas which he secured from customs examiner Marks. The two samples which he received from Examiner Marks were later received in evidence and marked "Collective Illustrative Exhibits A and B." Each consists of two bottles, one containing chick-peas and the other a powder. The witness testified that he analyzed the grindings from the three samples separately to determine the percentage of moisture, fat, crude fiber, protein, ash, and nitrogen-free extract and that the percentages of the ingredients in the three samples were all within the range of ingredients of chick-peas as described by Winton, vol. 2, page 343. On cross-examination the witness testified that the foreign substances he found to be present in exhibit 1 were less than 5 per centum of the total.

The next witness called by the defendant was Miss Mabel Stegner, who is a graduate of the University of Wisconsin in the home economics department, receiving a B. A. degree, and who has been a home economics consultant for 16 years and a home economics teacher of adults in Portland, Oreg., and has lectured in New York University, Pratt Institute, Columbia University, and other places. After examining collective illustrative exhibits A and B, the witness testified that they were chick-peas or garbanzos and that she has known them and has handled them since 1926; that chick-peas are cooked and served on a plate with fish, meat, etc., and are used as a vegetable; that they have very little flavor of their own and are usually cooked with bacon, salt pork, or something else, and that bouillon cubes may be added to the water in which they are cooked for flavoring purposes; that another method of cooking is to soak them overnight, cook until tender, and prepare them exactly like Boston baked beans; that they are also used in making vegetable soup and stews, cooking them with onions, potatoes, carrots, etc.; that she has a friend who serves Spanish food in entertaining guests and she had eaten chick-peas frequently at her home.

The next witness called by the defendant was Mr. Herbert Marks, a United States customs examiner in the appraiser's office at New York, who testified that he advisorily classified the merchandise herein involved as vegetables reduced to flour at 35 per centum ad valorem under paragraph 775; that he called the importer on the telephone to get information concerning the shipment and requested that some one from the firm who was familiar with the importation come to the appraiser's office for consultation; that Miss Estella Greenberg came in response to the telephone request and told him certain facts which had been told her, but he was not allowed to repeat what she said on the ground that it was hearsay.

The plaintiff later produced Miss Greenberg and she was called by the defendant, and testified that she is the secretary to Mr. H. M. Gidden, the plaintiff; that she came to the appraiser's office, at the request of Examiner Marks, and related the conversation she had with him, but the witness gave no competent evidence regarding the classification of the merchandise.

The defendant recalled Mr. Alexander Greenberg for further cross-examination. The witness was asked if there were in the shipment chick-peas known as "Royales," "Imperiales," "Selectos," and "Selectos No. 2" and he replied that there were, but those names represent the different qualities of chick-peas, some being grown in Sonora and others in Sinaloa, which are states in Mexico, but the different qualities were ungraded and were field-run chick-peas; that he graded them together but each quality was kept separately, but if they came from the same state they were mingled after grading.

The invoice does not cover the four grades of chick-peas which were separated from the shipment in the free zone and they are not involved in this case.

The plaintiff cites *H. B. Thomas & Co.* v. *United States*, 56 Treas. Dec. 131, T. D. 43504; *Fernando Badrena* v. *United States*, 73 Treas. Dec. 43, T. D. 49333; and *Ballester Hermanos* v. *United States*, 4 Cust. Ct. 254, C. D. 336.

In *H. B. Thomas & Co.* v. *United States*, *supra*, the merchandise is described as "broken or partly ground garbanzos" which had been classified by the collector as nonenumerated manufactured articles and assessed with duty at 20 per centum ad valorem under paragraph 1459 of the Tariff Act of 1922. The merchandise was claimed by the importer to be free of duty as chick-peas or garbanzos under paragraph 1657 or as crude vegetable substances under paragraph 1622, or dutiable at 10 per centum ad valorem as waste under paragraph 1457 or as screenings of seeds under paragraph 731. The court held that the merchandise was dutiable at 10 per centum ad valorem as screenings of seeds, ground, under paragraph 731. After stating that certain grades of garbanzos are used as cattle feed and quoting the testimony showing that the screenings were not suitable for planting, the court said:

> From an examination of the sample we find that it is composed of broken and shriveled peas and chaff, ground. It has all the appearance of ground screenings.
>
> Paragraph 731, in providing for screenings of grains or seeds, says "ground or unground." It is apparent, therefore, that Congress contemplated screenings of grain and seeds to be comprehended therein irrespective of their germinating power.
>
> We are of opinion that the screenings of garbanzos are clearly provided for under paragraph 731, *supra*, as screenings of seeds, ground, and so hold. Let judgment be entered accordingly.

In *Fernando Badrena* v. *United States*, *supra*, the importation consisted of whole garbanzos or chick-peas and also contained some straws, sticks, dirt, and chaff. The chick-peas in the exhibit were mixed in color, some of them being white, others brown, and still others black in appearance. The testimony showed that the importation consisted of substances which passed through the sieves when chick-peas or garbanzos were cleaned and graded. The collector classified that shipment under the provision for chick-peas or garbanzos in paragraph 769 of the Tariff Act of 1930 and the court, in a divided opinion, held that the collector's classification was correct. The three judges each wrote a separate opinion. Judge Evans based his opinion on the premise that chick-peas or garbanzos are not seeds and therefore screenings of the same would not come within the provision for "screenings * * * of * * * seeds" in paragraph 731, relying on the change in verbiage made by Congress in enacting the Tariff Act of 1930. It appears that in the Tariff Act

of 1922 (paragraph 1657) there was a provision for "Seeds: Chick-peas or garbanzos" and, in the Tariff Act of 1930, chick-peas or garbanzos were transferred to paragraph 769 without transferring the word "seeds" to that provision. Judge Evans expressed the opinion that due to this change in language Congress indicated an intent to consider that chick-peas or garbanzos were no longer to be considered as seeds and therefore that the commodity was not screenings of seeds. Judge Keefe, in concurring with Judge Evans in overruling the protest, expressed the opinion that chick-peas or garbanzos were seeds, but was of opinion that the commodity was not screenings because screenings do not contain the articles from which screened. He was of opinion that as the shipment contained chick-peas or garbanzos, although of an inferior grade, it was dutiable under the *eo nomine* provision therefor. Judge Cline, who wrote a dissenting opinion, agreed with Judge Keefe in holding that chick-peas or garbanzos were seeds, but expressed the opinion that the merchandise was screenings of seeds under paragraph 731, citing the legislative history showing that seed chick-peas or garbanzos were transferred to paragraph 769 and quoting the definition of chick-peas in Webster's New International Dictionary, 1933 edition, reading as follows:

chick-pea. A fabaceous herb of southern Europe (Cicer arietinum) that bears short pods with one or two seeds somewhat resembling peas in flavor; also, its seed, which is an important article of diet, esp. in southern Europe and in India * * *.

In the case of *Ballester Hermanos* v. *United States, supra*, the merchandise involved was described by the court as "small garbanzos, gray-bluish in color, dried, without any foreign substance intermingled therewith, so far as the naked eye can discern." The court distinguished the merchandise from that passed upon in the *H. B. Thomas* case, *supra*, using the following language:

* * *. In that case the court was dealing with a ground commodity which contained a certain amount of chaff, extraneous matter which is found in screenings. We have no such situation at hand. The imported commodity consists of garbanzos cleaned and dried and therefore falls within the provisions of the paragraph of the tariff act under which it was taxed by the collector.

The decision in *Tower & Sons* v. *United States*, 11 Ct. Cust. Appls. 489, T. D. 39629, seems to have some bearing on the principle involved in the two cases last referred to. In that case one of the commodities passed upon was classified by the collector as screenings, but, there being no provision for screenings in the act there under consideration (1913), duty was assessed at 10 per centum ad valorem as a nonenumerated unmanufactured article under paragraph 385 and the court held that the collector's assessment was correct, the claim of the importer being that the shipment was free of duty under the provision for wheat in paragraph 644. In disposing of that claim, the court said:

\* \* \*. The merchandise referred to in protests 933351 and 933461 contained from 38¼ to 45 per centum of wheat mixed with oats, barley, weed seeds, chaff, dirt, etc. It was not fit for human consumption or for seed, and was used as food for chickens. Such a mixture of grains, seeds, and refuse would not be popularly regarded as wheat and is excluded from the common ordinary meaning of that word.

The same conclusion was reached with respect to a similar commodity in *Williamson* v. *United States*, 8 Ct. Cust. Appls. 277, T. D. 37538. The court said at page 282:

We must, therefore, hold that the screenings are not wheat in trade and commerce and that consequently they can not be subjected to the duty prescribed for wheat by the tariff act.

The merchandise in the instant case appears to be in the nature of that in the *H. B. Thomas & Co.* case, *supra*, and, as that decision covered merchandise imported under the Tariff Act of 1922 and the provisions of paragraph 731 of that act were reenacted without change in the Tariff Act of 1930, it must be presumed that Congress was cognizant of that decision when it reenacted the provision, which carries with it the presumption of legislative approval of the judicial interpretation. *United States* v. *Bassichis Co. et al.*, 16 Ct. Cust. Appls. 410, T. D. 43133, and cases therein cited.

In the instant case, however, a different question is raised. The collector classified the merchandise as vegetables reduced to flour under paragraph 775 of the Tariff Act of 1930. The plaintiff contends that the commodity is not flour, basing his claim on the showing that it has not been subjected to a bolting process, citing *Importers Commission Co., Inc.* v. *United States* (10 Cust. Ct. 205, C. D. 755) wherein the question involved was whether the merchandise was soybean oil-cake meal or flour. In holding that the commodity was not shown to be meal as distinguished from flour, the court cited *Frank P. Dow Co. (Inc.)* v. *United States*, 58 Treas. Dec. 436, T. D. 44328, wherein the court said at page 438:

The merchandise at bar is finely-ground oil cake. Should it be regarded as oil-cake meal or oil-cake flour? In deciding whether or not an article is meal it would seem from the definitions that the degree of fineness is not material. So long as it is not bolted it is meal, no matter how fine it is.

As the imported product in the instant case has not been through a bolting process, it is evident that it is not flour. Therefore, the presumption of correctness attaching to the collector's decision falls.

Counsel for the defendant intimates in his brief that if the importation is not vegetables reduced to flour it should be classified as vegetables reduced in size and assessed at the same rate under the same paragraph.

As the presumption of correctness attaching to the collector's classification of the imported product as vegetables reduced to flour has been overcome, because under the judicial rulings a product is

not flour unless it has gone through a bolting process, the defendant has the burden of establishing that the commodity is vegetables reduced in size, if that claim is to be relied upon, citing *United States* v. *White Sulphur Springs Co.*, 21 C. C. P. A. (Customs) 203, T. D. 46728, wherein the court said at page 205:

Where a paragraph of a tariff act makes provision for two or more distinctly different kinds of merchandise and the collector of customs specifically classifies an importation as one of those kinds, the legal presumption that such classification is correct attaches, but such presumption of correctness is limited to the specific classification made, and, in case it be found that the merchandise is not such specific kind, it may not be held that there is a legal presumption that it is some other kind which happens to be included in the same paragraph but of which the appraiser gives no description and the collector makes no mention in his classification.

The testimony of witness Stegner shows that chick-peas or garbanzos similar to those in collective illustrative exhibits A and B are used as food in cooking and serving at meals. Counsel for the defendant argues that, in determining whether the imported product is a vegetable, the test to be applied is whether it is in fact eaten as a vegetable at meals, citing numerous cases. That principle is well settled. However, witness Stegner was not interrogated in regard to the use of exhibit 1. Her testimony was limited to the use of merchandise like collective illustrative exhibits A and B, and, from her description as to how they were used, it seems that she was describing the use of the whole chick-peas or garbanzos in those exhibits rather than the ground portion. Witness Alexander Greenberg testified that the merchandise represented by exhibit 1 was sold to "a feed man, Mr. Charles Schaefer." We are of opinion that such testimony indicates that it was destined for use as animal feed. Such use appears to be the same as that of the commodity considered in the *H. B. Thomas & Co.* case, *supra*. There is no evidence in the record showing that screenings of chick-peas or garbanzos in the condition of those in exhibit 1 are used as food by human beings and it is obvious that the evidence is not sufficient to establish that the imported commodity is vegetables reduced in size.

Even if it was considered that screenings of chick-peas are chick-peas or vegetables, which would be in conflict with the principle announced in *Tower & Sons* v. *United States, supra*, where screenings of wheat were held not to be wheat, the screenings in the instant case have been made into a new article, a meal.

We find that the imported product is accurately described within the provision for "screenings * * * of * * * seeds: Unground, or ground * * *," as was held in the *H. B. Thomas* case, *supra*, and we hold that it is properly dutiable at 5 per centum ad valorem under paragraph 731 of the Tariff Act of 1930, as modified by the trade agreement with Canada, T. D. 49752. That claim in the

protest is sustained, and, to that extent, judgment will be rendered in favor of the plaintiff.

All other claims are overruled.