## TOWER & SONS *v.* UNITED STATES (No. 2199).[1]

WHEAT, IMPURE AND DAMAGED.

A mixture containing from 38¼ to 45 per cent of wheat mixed with oats, barley, weed seeds, chaff, dirt, etc., not fit for human food or for planting, but used as feed for chickens, is not wheat and is not admissible free of duty as such under paragraph 644, tariff act of 1913. Its classification as a nonenumerated unmanufactured article under paragraph 385 is not disturbed. Wheat which has been damaged by fire so that it is unfit for human food, used for feeding chickens, is still wheat and entitled to free entry as such under paragraph 644.

## United States Court of Customs Appeals, May 7, 1923.

APPEAL from Board of United States General Appraisers, Abstract 45055.

[Modified.]

*Barnes, Chilvers & Halstead* (*Frank M. Halstead* of counsel) for appellants.

*William W. Hoppin,* Assistant Attorney General (*Charles D. Lawrence* and *Harry M. Farrell,* special attorneys, of counsel), for the United States.

[Oral argument January 23, 1923, by Mr. Halstead and Mr. Lawrence.]

Before MARTIN, Presiding Judge, and SMITH and BARBER, Associate Judges.

SMITH, Judge, delivered the opinion of the court:

An importation consisting of a mixture of wheat, oats, barley, weed seed, chaff, and dust or dirt was classified by the collector

---

[1] T. D. 39629.

of customs at the port of Buffalo, N. Y., as screenings and assessed for duty at 10 per cent ad valorem as a nonenumerated unmanufactured article under that part of paragraph 385 of the tariff act of 1913 which reads as follows:

PAR. 385. That there shall be levied, collected, and paid on the importation of all raw or unmanufactured articles not enumerated or provided for in this section, a duty of 10 per centum ad valorem. * * *

The importers protested that the goods were not screenings and that they were entitled to free entry as wheat or wheat products under that part of paragraph 644 of the free list, which reads as follows:

FREE LIST.

That on and after the day following the passage of this act * * * the articles mentioned in the following paragraphs, shall when imported * * * be exempt from duty.

PAR. 644. Wheat, wheat flour, semolina, and other wheat products, not specially provided for in this section: * * *

The Board of General Appraisers overruled the protest and the importers appealed.

On the hearing the importers produced three witnesses and sought to prove by their testimony that the importation was known and designated in the trade as sample wheat.

The witness Anderson testified that he had been engaged in the wholesale grain trade in the United States for more than 20 years, and that the importation was bought and sold by the wholesale trade as sample wheat; that the higher grades of wheat were bought and sold as Nos. 1, 2, 3, 4, 5, and 6 wheat. That No. 1 red winter wheat contained 95 per cent of good marketable milling wheat; that Nos. 2, 3, 4, 5, and 6 ranged from about 92 per cent to 50 per cent of marketable milling wheat; that the importation was sample or feed wheat; that it was not fit for milling or for human consumption so far as he knew; *that an importation containing 45 per cent wheat and 47 per cent of oats and the remainder barley would still be called sample or feed wheat; that if it contained 38 per cent wheat, 40 per cent oats, and the remainder barley, it would be called sample or feed wheat*; that he did not know of any name for the commodity in question other than *sample or feed grain;* that the merchandise was very much superior to screenings, and that it would be commercially practicable to produce screenings from a commodity such as that imported.

B. J. Burns testified that he had been engaged in the wholesale grain business for 25 years; that he bought merchandise of the kind imported as feed wheat or sample wheat; that he *bought it by sample* and that *"you can call it what you want;"* that the recognized grades of wheat ran from No. 1 to No. 6; that the product imported was

not within the list of graded wheats and came under the head of rejected wheat; that the numbered grades of wheat are very largely bought and sold on certificates of inspection; that rejected wheats are bought on sample and are therefore termed sample wheats; that the graded wheats may be used for seed or for milling purposes and in exceptional cases for animal food; that rejected wheat was not ordinarily used for human consumption or for seed; *that a mixture of wheat, barley, oats, other seeds, dust, chaff, etc., is known as scalpings or screenings.* This witness thought that all six grades of graded wheat must contain 90 per cent of wheat or over. .

The witness James H. Cosgrift testified that the merchandise covered by protest 934350 was salvage wheat, that is, wheat which had been damaged or burned; that it was wheat which had been damaged by fire and contained a considerable quantity of charred grains unfit for human food; that it was nearly all wheat and was used to feed poultry; that if the merchandise covered by that protest had not been charred or burned it would have been graded wheat. This description of the wheat is fully confirmed by the Federal inspector who certified it to be sample *graded wheat;* that is to say, graded wheat sold on sample. Cosgrift further testified that screenings are the by-product of the cleaner and may contain almost anything; that screenings are handled chiefly on sample; that the goods covered by protest 934350 were not screenings inasmuch as screenings are broken grains, mixed grains, chaff, dirt, and sticks.

We are of the opinion that the merchandise covered by protest 934350, before it was damaged by fire, came within one of the six numbered grades of wheat and that what was left after it was damaged by burning was still wheat.—Atwood-Stone Co. *v.* United States (5 Ct. Cust. Appls. 472; T. D. 35004). The evidence does not satisfy us that the merchandise covered by protests 934351 and 933461 is wheat, as that term is generally and uniformly used in the trade. Importers' witness Anderson declared that it was known as sample wheat and also as sample or feed grain. The testimony of Burns is not at all convincing that merchandise such as that imported is bought and sold by the wholesale trade as wheat. Indeed his testimony is rather convincing that such merchandise is regarded by the trade as scalpings or screenings. The merchandise referred to in protests 933351 and 933461 contained from $38\frac{1}{4}$ to 45 per cent of wheat mixed with oats, barley, weed seeds, chaff, dirt, etc. It was not fit for human consumption or for seed, and was used as food for chickens. Such a mixture of grains, seeds, and refuse would not be popularly regarded as wheat and is excluded from the common ordinary meaning of that word.

As the commodity comes within the description of screenings as defined by the importers' witnesses Barnes and Cosgrift, we are not

disposed to disturb its classification as a nonenumerated unmanufactured article. See Williams v. United States (8 Ct. Cust. Appls. 277; T. D. 37538).

The decision of the Board of General Appraisers is reversed as to protest 934350 and affirmed as to protests 934351 and 933461.

    *Modified.*