FENTON CO. ET AL. *v.* UNITED STATES (No. 2735)[1]

DRAWBACK—CONTINUOUS CUSTOMS CUSTODY—ACCEPTANCE OF DELIVERY PERMIT.

Section 557, Tariff Act of 1922, grants drawback, under Treasury regulations, to goods which have remained continuously in customs custody. Section 558 denies it after the goods have been released from Government control. Article 955, Customs Regulations, 1923, provides that customs custody ceases when the delivery permit has been accepted by the customs officer in charge. Importer had made entry, paid duty, and received delivery permit. During the unloading he observed that the goods were of an inferior quality to those ordered and gave the customs officer the delivery permit, telling him that the goods would have to go back on the same ship. The action of the customs officer in receiving the permit was not an acceptance of it within the meaning of Article 955, and drawback should have been allowed.

United States Court of Customs Appeals, November 19, 1926

APPEAL from Board of United States General Appraisers, G. A. 9079, T. D. 41288

[Reversed.]

*Frank L. Lawrence (Martin T. Baldwin* of counsel) for appellants.

*Charles D. Lawrence,* Assistant Attorney General *(Fred J. Carter* and *Oscar Igstaedler,* special attorneys, of counsel), for the United States.

[Oral argument October 4, 1926, by Mr. Carter]

Before GRAHAM, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD, Associate Judges

BLAND, Judge, delivered the opinion of the court:

A shipment of casein arrived May 16, 1923, at San Francisco consigned to The Fenton Co., appellants, and on May 17 it was entered for consumption, duty was paid, and the delivery permit was issued and placed in the hands of importers' customs broker.

As the goods were being unloaded from the ship onto the pier, importers' representative, Mr. Moore, visited the pier and noticed that some of the casein, which had been spilled from the sacks, was not of the quality ordered. He then determined that the merchandise could not be accepted and must be returned on the same ship.

[1] T. D. 41885.

At this time the delivery permit had not been turned over to the customs officer in charge. Appellants' representative, Mr. Moore, at the time he discovered the condition of the merchandise, did not have the permit with him. He obtained it the next morning and gave it to the customhouse officer, Mr. Olivier, and said: "Jerry, you look after this stuff. I paid $800 duty and I guess I will get it back." He told him the merchandise was not to be received; that it was to go back on the ship. They were then unloading the merchandise, all of which was in the possession of the customs officers. Mr. Moore took a small portion or sample of the merchandise which he picked up from the dock. He never touched the merchandise in any other way. The goods were loaded on the same ship upon which they arrived and were exported.

The customs inspector certified on the back of consumption entry permit the following:

5/29/23    434 in full.—Retained in continuous customs custody until exported on Str. *Ventura* 5/29/23—See Drawback entry #135.   Jos. A. Olivier Insp.

On May 25 the drawback entry for export was filed. The merchandise was actually exported on May 29. The merchandise was under customs guard at all times and under lock at night.

The collector refused to allow the claim for drawback. The Board of General Appraisers (now United States Customs Court), sustained the action of the collector and appellants have appealed to this court.

Sections 557 and 558 of the Tariff Act of 1922 read as follows:

557. * * * Merchandise upon which the duties have been paid and which shall have remained continuously in bonded warehouse or otherwise in the custody and under the control of customs officers, may be entered or withdrawn at any time within three years after the date of importation for exportation, or for transportation and exportation, under such regulations as the Secretary of the Treasury shall prescribe, and upon such entry or withdrawal, 99 per centum of the duties thereon shall be refunded. * * *

558. REFUND AFTER DELIVERY OF GOODS.—No refund or drawback of duty shall be allowed on the exportation of any merchandise after its release from the custody or control of the Government except in case of the exportation of articles manufactured or produced in whole or in part from imported materials on which a drawback of duties is expressly provided for by law.

Article 955 of the Customs Regulations of 1923 provides:

ART. 955. *Continuous custody.*—No drawback shall be allowed on any merchandise after it has been released from the custody or control of the Government prior to being laden for exportation, as such custody must be continuous and uninterrupted from the time of importation to the time of exportation.

Merchandise which has been released to an importer under the bond prescribed by section 486, tariff act of 1922, and returned to the appraiser's stores upon requisition of the collector, and merchandise released under six months' bond, as provided for in section 308 of the said act, has not been in the continuous custody of customs officers.

Merchandise which remains upon the wharf by permission of the collector is in customs custody. *This custody ceases when the permit has been accepted by the customs officer in charge and there is nothing further to be done by him in the way of measuring, weighing, gauging, etc.* (Italics ours.)

It will be noted that the statute provides that merchandise may be exported under certain conditions if the same shall have remained continuously in the custody of, or under the control of customs officials, " * * * under such regulations as the Secretary of the Treasury shall prescribe."

The regulation adopted provides that "custody ceases when the permit has been accepted by the customs officer in charge, and there is nothing further to be done by him in the way of measuring, weighing, gauging, etc." Assuming without deciding that the regulation is valid, it seems to us that the sole question here is, did the customs officer in charge *accept* the permit of delivery within the meaning of article 955? The ordinary meaning of the word "accept" is not involved in any doubt, but it is our duty to determine what the legislature and the Treasury Department intended to be the effect of the language used. Unquestionably it was the desire of Congress that no goods should be exported without payment of duty which had come into the commerce in this country, and to insure this result it provided that only such goods as should remain continuously in customs custody, or in bonded warehouse, could be so withdrawn for export. The Treasury Department, under proper authority, undertook to say when goods left the custody of the Government officials, and stated that the custody ceased when the permit had been accepted by the customs officer in charge, and when there was nothing further to be done by him in the way of measuring, weighing, gauging, etc. It is not claimed that there was anything further to be done, and if it can be said that the customs officer accepted the permit of delivery, in the sense intended by the regulation, then customs control ceased and the importers did not have the privilege of drawback.

The intent of the law is the law. We do not think appellants' representative delivered the permit to the customs official with the intention of accepting the goods. It is undisputed and unquestioned that his delivery of the same was with the express understanding that he was not to accept the goods. The customs official in good faith took the permit with the understanding that it was not accepted within the meaning of the regulation, that is, accepted in the sense of releasing control of the merchandise.

Both parties to the transaction understood fully that the delivery of the permit was not a delivery for the purpose of obtaining possession and control. It is urged that the action of the customs official and appellants' representative, or any understanding they might

have, can not affect or change the force and effect of the statute or the regulation. Replying to this it is sufficient to say that their acts and intentions constitute or fail to constitute *acceptance*. If the permit had been lost, or if Mr. Moore had retained it in his pocket, there would have been no question in the case. Or let us suppose Mr. Moore told him he was not going to take the goods and handed him the permit, and had him destroy it in his presence. In the supposed case the permit had been handed to the official and he had received it, and yet, surely, it can not be seriously contended that it had been "accepted."

It is suggested in appellants' brief that the delivery of the permit to the inspector with instructions served a useful and proper purpose in preventing the merchandise from being sent to general order, and that its delivery was intended to insure a quick reloading and exportation of the merchandise. This seems reasonable under the circumstances.

The statute here involved is remedial in character and should be liberally construed toward accomplishing all the purposes intended.

We think, unquestionably, that the goods were continuously in the custody and under control of customs officers and that the permit had not been accepted by the customs officer in charge within the meaning of the regulation. The case of *United States* v. *Cronkhite Co.*, 9 Ct. Cust. Appls. 129, which was cited, is not in point. The mere fact that appellants' representative physically handed over the permit and that the inspector physically took it in his hand and retained it, does not, under the facts of this case, constitute such an acceptance as the law contemplates. Ordinarily it might be sufficient, but when the undisputed facts show that both parties to the transaction did not so intend, such intent or lack of intent, can not be ignored.

The collector should have allowed the claim for drawback, and the judgment of the Board of General Appraisers (now United States Customs Court) is *reversed*.