(C. D. 986)

W. F. Mackay *v.* United States

68

United States Customs Court, Third Division

(Decided February 20, 1946)

*Barnes, Richardson & Colburn* (*Joseph Schwartz* of counsel) for the plaintiff.
*Paul P. Rao*, Assistant Attorney General (*Richard H. Welsh* and *Herbert M. Rosenberg*, special attorneys), for the defendant.

Before CLINE, KEEFE, and EKWALL, Judges

EKWALL, Judge: A carload of frozen fish of three different varieties was brought into the United States at the subport of Noyes, Minn. All of the fish were entered and assessed for duty at the rate of three-fourths of 1 cent per pound under paragraph 717 of the Tariff Act of 1930 as modified by the trade agreements with Canada, T. D. 48033 and T. D. 49752. A portion of the importation consisted of 232 boxes of frozen tullibees. As to these the representative of the Federal Security Administration was not satisfied that the sample submitted under the provisions of the Food, Drug, and Cosmetic Act (U. S. C. title 21, section 381) and the regulations promulgated thereunder, was representative of the merchandise and therefore required that all of the tullibees be forwarded to Minneapolis for inspection. The plaintiff, rather than comply with the request, exported the tullibees under customs supervision and now claims a refund of the duties paid on those fish. The collector of customs refused to refund the duties apparently because a consumption entry had been made and a delivery permit issued for the tullibees in question prior to their exportation to Canada.

Plaintiff contends that duties should be refunded because the fish in question were not "released from the custody of the Government" within the contemplation of section 558 of the Tariff Act of 1930 as

amended by the Customs Administrative Act of 1938. For convenience of reference we quote the section, as amended, as follows:

### SEC. 558. NO REMISSION OR REFUND AFTER RELEASE OF MERCHANDISE.

(a) No remission, abatement, refund, or drawback of estimated or liquidated duty shall be allowed because of the exportation or destruction of any merchandise after its release from the custody of the Government, except in the following cases:

(1) When articles are exported with respect to which a drawback of duties is expressly provided for by law;

(2) When prohibited articles have been regularly entered in good faith and are subsequently exported or destroyed pursuant to a law of the United States and under such regulations as the Secretary of the Treasury may prescribe; and

(3) When articles entered under bond, under any provision of law, are destroyed within the bonded period as provided for in section 557 of this Act, or are destroyed within the bonded period by death, accidental fire, or other casualty, and proof of such destruction is furnished which shall be satisfactory to the Secretary of the Treasury, in which case any accrued duties shall be remitted or refunded and any condition in the bond that the articles shall be exported shall be deemed to have been satisfied.

(b) When articles are exported or destroyed under customs supervision after once having been released from customs custody, as provided for in subsection (c) of section 304 of this Act, such exportation or destruction shall not exempt such articles from the payment of duties other than the marking duty provided for in such subsection (c).

The customs regulations applicable in the case are found in article 1079 of the Customs Regulations of 1937, as amended by T.D. 49658, and are as follows:

Art. 1079. Continuous Custody.—(a) Tariff Act of 1930, section 558 (a), as amended by the Customs Administrative Act of 1938, section 24:  [558 (a) as set forth above].

(b) Duties (except additional duties for undervaluation) may be remitted or refunded upon the exportation of imported articles which have remained continuously in customs custody from the time of importation to the time of exportation, unless such articles have become subject to sale as unclaimed or abandoned merchandise.

(c) Merchandise which has been released to an importer under the bond prescribed by article 314 of these regulations, and returned to the appraiser's stores upon requisition of the collector, and merchandise released under 6 months' bond, as provided for in section 308 of the Tariff Act of 1930, has not been in the continuous custody of customs officers.

(d) Merchandise which remains upon the wharf by permission of the collector is in customs custody. This custody ceases when the permit has been accepted by the customs officer in charge, and there is nothing further to be done by him in the way of measuring, weighing, gauging, etc.

(e) In the case of merchandise entered for warehouse, customs custody ceases when the storekeeper with whom a delivery permit has been lodged has released the merchandise to or upon the order of the proprietor of the warehouse, as provided in articles 331 and 933 (a) and (b).

(f) Except as provided by paragraph (d) of this article, merchandise examined elsewhere than at the public stores in accordance with the provisions of article 770 is released from customs custody when final examination for purposes of appraisement has been completed.

In the brief filed on behalf of the plaintiff it is urged that even if it be found by the court that the merchandise was released from the custody of the Government, the fish here involved were in effect prohibited articles and were subsequently exported pursuant to the laws and regulations of the United States, and therefore the case falls within subsection (2) of section 558, above quoted.

The Government claims that a consumption entry permit was issued, all of the merchandise was released from customs custody, and thereafter the tullibees were voluntarily exported by the plaintiff; the plaintiff accordingly is not entitled to a refund of the duties paid on the merchandise which was exported.

Plaintiff produced in support of his claims the testimony of Mr. W. F. Mackay, the nominal consignee, who had been a customs broker at the subport of entry for 39 years. He stated that the entry was prepared under his direction and that the merchandise was entered for consumption; that the importation consisted of three varieties of fish, two of which were unloaded from the car, but as to the third variety, consisting of tullibees, it was necessary to send a sample for inspection to the Department of Agriculture's representative at Minneapolis. It further appeared from the testimony of this witness that the Department of Agriculture was not satisfied that the sample was representative of the shipment and therefore requested that the plaintiff forward all of the tullibees to Minneapolis for inspection. This the plaintiff was unwilling to do and accordingly he exported the tullibees, although they were covered by the consumption entry previously made and in spite of the fact that a consumption entry permit had been issued to the plaintiff.

Plaintiff's witness testified further that when a delivery permit is given in a customs case, the importer can take delivery of the merchandise but if there are restrictions, as in this case, he is not free to dispose of the merchandise as he sees fit. In the case at bar the customs authorities delivered the fish to the importer on condition that the Pure Food Department would pass it. If it were not passed by the Pure Food Department, the importer would be called upon to redeliver the shipment, destroy it under customs supervision, or export it (U. S. C. title 21, sec. 381). The Pure Food Department neither accepted nor rejected the shipment for the reason that the importer chose to export it rather than incur the expense of shipping the car to Minneapolis for inspection. There is no claim that the Pure Food and Drug Department was acting beyond the scope of its authority in requiring that all of the tullibees be examined. Plain-

tiff's witness made certain statements as to the attitude and statements of the chief of the Minneapolis station of the Pure Food and Drug Inspection Service. However, these were hearsay and are of no probative value. The report of said official in evidence is as follows:

STATEMENT OF CONDITIONS TO BE FULFILLED: (3–22–41)

This Station could not give a release on this sample of fish since we were not certain that the Customs sample was representative of the entire lot contained in the car, and we notified the Railroad Co. that when the car reached St. Paul, Minn. we would thoroughly investigate the car and could then release the shipment if no infested fish were concealed in the car. This information was transmitted to the Foreign shipper and the importer. We were later advised by the R. R. Co. that they were unable to obtain a guarantee that the freight to St. Paul, would be paid if the shipment was rejected and sooner than submit the fish to reinspection at destination we were informed that the car was being returned to the Country of origin. Accordingly, this form is sent as a matter of record only.

The form used is that for merchandise which is found not to comply with the provisions of the Federal Food, Drug, and Cosmetic Act, *supra*, which is not applicable but, as stated, was sent as a matter of record only.

The Government introduced the testimony of the inspector of customs at the subport of Noyes, who testified in effect that after examining the car and finding that a portion of the importation consisted of tullibees, he sent a sample thereof to the Department of Agriculture (Pure Food and Drug Department), completed his inspection, and released the car from customs custody. When asked how he effectuated the release of the car, he replied he did so by signing the consumption entry permit, which is part of the official papers transmitted to the court by the collector. He further testified that his signature to that document indicated that he released the car which was turned over to the importer and released from customs custody.

Section 558, set forth above, is explicit in its wording and prohibits refund of duty because of exportation after the release of merchandise from the custody of the Government, except in certain enumerated cases. The situation presented here is not within the exceptions noted. Plaintiff urges that the goods fall within subsection (a) (2) in that they are prohibited articles. The record is lacking in proof that these fish were prohibited articles. The customs officials had examined them and assessed them for duty under the appropriate provisions of the tariff act. Inasmuch as plaintiff declined to forward the fish to the Pure Food and Drug Division of the Department of Agriculture at Minneapolis for examination, that department of the Government had no opportunity to decide whether or not they were

such merchandise as was prohibited by statute. Therefore, we find the contention of plaintiff on that issue to be without merit.

The burden of establishing that the merchandise was not released from customs custody was cast upon the plaintiff. In the case of *Semaira* v. *United States*, 73 Treas. Dec. 334, T. D. 49421, the court used the following language:

In the case of *Elmore & Mullen* v. *United States* (G. A. 6950, T. D. 30182, 18 Treas. Dec. 380) the court held that section 3025 of the Revised Statutes prohibited the refund of customs duties assessed on potatoes which had been withdrawn from customs custody and subsequently exported to Canada. Although section 3025 of the Revised Statutes was worded differently from section 558 of the act of 1930, the meaning thereof is substantially the same.

\* \* \* \* \* \* \*

In the absence of proof by the plaintiff that the merchandise had not been released from the custody or control of the Government prior to the exportation thereof, we must assume that the goods had been withdrawn.

In the instant case the plaintiff admitted that he had made an entry for consumption and that the fish which were not required to be tested had been unloaded; that he had obtained a consumption entry permit and that he had posted a redelivery bond under the terms of which he had obligated himself to return the merchandise to the collector of customs in the event of its rejection by the Department of Agriculture. Further, he admitted that the Department of Agriculture had not rejected the merchandise but that it had been exported by the plaintiff of his own volition. Plaintiff contends in his brief that it does not appear from the record that the consumption entry permit was delivered to the importer or his agent. Under the above holding, proof of that fact devolved upon the plaintiff in view of the presumption of correctness attaching to the collector's action. Plaintiff also contends that the merchandise was not actually "released" because of the requirement that the car be shipped to Minneapolis for inspection by the Food and Drug Department. This he construes as a restriction upon the delivery permit. It is the opinion of the court that in view of the admission that a redelivery bond was given by the plaintiff, as shown by the evidence, the merchandise had been released from customs custody. Surely there would have been no necessity for the posting of such a bond by the plaintiff, had the merchandise remained in customs custody. Nor can the fact that the car remained in the railroad yards change the status of this merchandise, as the evidence discloses that it was not sealed at that time.

The case of *Fenton* v. *United States*, 14 Ct. Cust. Appls. 277, T. D. 41885, cited in plaintiff's brief as analogous to the instant case, is distinguishable. There, the question before the court was whether the merchandise, consisting of casein, exported for drawback, had remained in continuous customs custody up to the time of its exportation. The goods were entered for consumption, duty was paid, and

the delivery permit issued and placed in the hands of the importer's customs broker. While the goods were being unloaded, the importer noticed that some of the casein was not of the quality ordered and he therefore decided not to accept the merchandise. He thereupon handed the delivery permit to the customs officer in charge and informed said customs officer that the goods were to be returned on the same ship. Article 955 of the Customs Regulations of 1923, there applicable, provided that merchandise which remained upon the wharf by permission of the collector was in customs custody but that customs custody ceased when the delivery permit had been accepted by the customs officer in charge. (Article 1079 here involved contains an identical provision.) The court held that the goods had been in continuous customs custody and under control of customs officers, and that the permit had not been accepted by the customs officer in charge within the meaning of the regulation. This holding was based upon a finding that neither of the parties to the transaction intended their actions to constitute an acceptance. In so holding, the court used the following language:

* * * The mere fact that appellants' representative physically handed over the permit and that the inspector physically took it in his hand and retained it, does not, under the facts of this case, constitute such an acceptance as the law contemplates. Ordinarily it might be sufficient, but when the undisputed facts show that both parties to the transaction did not so intend, such intent or lack of intent, can not be ignored.

The facts in the instant case fail to disclose the intent of the parties to the transaction.

The court is of the opinion and so holds that the goods were released from customs custody. However, section 558, *supra*, does not prohibit refund of duty on merchandise such as is involved in this case because of exportation after its release from the custody of the customs, but after its release from the custody of "the Government." The statement of the Food and Drug Inspection Service Chief, set forth above, clearly indicates that after examination of the car the Pure Food and Drug officials "could then release the shipment if no infested fish were concealed in the car," indicating that until then they could not release it. Therefore, it is clear that in this case the goods had not been released from "the custody of the Government," and the provisions of section 558, *supra*, do not preclude the refund of the liquidated duty on the tullibees. Inasmuch as the record discloses that the tullibees were exported under customs supervision, it is the opinion of the court and we so hold that the collector should have refunded the amount of duty found due upon liquidation and paid upon that merchandise.

Plaintiff's claim is therefore sustained. Judgment will be rendered accordingly.