(C. D. 1127)

H. A. JOHNSON CO. *v.* UNITED STATES

United States Customs Court, Third Division

(Decided August 25, 1948)

Barnes, Richardson & Colburn (J. Bradley Colburn of counsel) for the plaintiff.
Paul P. Rao, Assistant Attorney General (Dorothy C. Bennett, special attorney), for the defendant.

Before CLINE, EKWALL, and JOHNSON, Judges

EKWALL, Judge: · Plaintiff in this case is seeking a refund of duties assessed on a quantity of Brazil nuts which were found to be inedible. The nuts entered the United States at Pensacola, Fla., from which point they were transported under bond to New York where they were entered for consumption and duty was paid on September 15, 1942. Two entries are involved. The collector of customs assessed duty at the rate of 2¼ cents per pound under paragraph 757 of the Tariff Act of 1930, as modified by the Brazilian Trade Agreement (T. D. 48034), upon the quantity represented by the Government weigher's total net weight of 41,621 pounds.

Plaintiff claims that allowance in duties should be made under section 558 (a) (2) of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938, for the quantity destroyed or lost in the process of reconditioning, pursuant to an order of the Food and Drug Administration of the Federal Security Agency, acting under authority of section 801 of the Federal Food, Drug, and Cosmetic Act of 1938, 52 Stat. 1058. Alternatively, it is claimed that 6,262 pounds resulting from said reconditioning are free of duty under paragraph 1727 of the Tariff Act of 1930. Said paragraph 1727 provides, among other things, for "nuts, not specially provided for, when the oils derived therefrom are free of duty."

The Government's contentions as set forth in the brief filed are: (a) That the importations are properly dutiable as Brazil nuts, as assessed, on the basis of the total net weight returned by the Government weigher at the time of importation, for the reason that the shipments were released from customs custody on the date of entry and no portion thereof was destroyed under customs supervision thereafter; (b) that 6,262 pounds of these nuts, from which the oil and residue were separated in this country for soap making and for cattle feed, are dutiable because they were actually used commercially in this country; (c) that the eo nomine provision in paragraph 757, supra, for "Brazil nuts," in the absence of a "not specially provided for" clause or other qualification, is general and includes Brazil nuts in any form, condition, or quality; and (d) these importations are not entitled to classification under paragraph 1727, supra,

as "Oil-bearing * * *" nuts, not specially provided for," etc., because they are specifically provided for in paragraph 757, *supra*.

We set forth the applicable statutes as follows:

TARIFF ACT OF 1930:

> PAR. 757 [as modified by the Brazilian Trade Agreement, T. D. 48034].
> Cream or Brazil nuts:
>
> *        *        *        *        *        *        *
>
> Shelled, 2¼ cents per pound.
>
> PAR. 761. * * * *Provided,* That no allowance shall be made for dirt or other impurities in nuts of any kind, shelled or unshelled, and that a mixture of two or more kinds of nuts shall bear the highest rate of duty applicable to any of the components.
>
> PAR. 1727 [Free list]. Oil-bearing seeds and nuts: * * * seeds and nuts, not specially provided for, when the oils derived therefrom are free of duty.

FEDERAL FOOD, DRUG, AND COSMETIC ACT:

> § 342. **Adulterated food.**
>
> A food shall be deemed to be adulterated—
>
> (a) **Poisonous, insanitary, etc., ingredients.**
>
> (1) If it bears or contains any poisonous or deleterious substance which may render it injurious to health; * * * or (3) if it consists in whole or in part of any filthy, putrid, or decomposed substance, or if it is otherwise unfit for food; * * *. [52 Stat. 1046, sec. 402, as amended; U. S. C. 1940 ed., Title 21, § 342.]
>
> § 381. **Imports and exports**—(a) **Imports; examination and refusal of admission.**
>
> The Secretary of the Treasury shall deliver to the Federal Security Administrator, upon his request, samples of food, drugs, * * * which are being imported or offered for import into the United States, giving notice thereof to the owner or consignee, who may appear before the Federal Security Administrator and have the right to introduce testimony. If it appears from the examination of such samples or otherwise that * * * (3) such article is adulterated, * * * then such article shall be refused admission. * * *
>
> (b) **Same; disposition of refused articles.**
>
> The Secretary of the Treasury shall refuse delivery to the consignee and shall cause the destruction of any such article refused admission, unless such article is exported by the consignee within three months from the date of notice of such refusal, under such regulations as the Secretary of the Treasury may prescribe: *Provided,* That the Secretary of the Treasury may deliver to the consignee any such article pending examination and decision in the matter on execution of a bond as liquidated damages for the amount of the full invoice value thereof together with the duty thereon and on refusing for any cause to return such article or any part thereof to the custody of the Secretary of the Treasury when demanded for the purpose of excluding it from the country or for any other purpose, such consignee shall forfeit the full amount of the bond as liquidated damages.
>
> *        *        *        *        *        *        *
>
> [52 Stat. 1058, sec. 801, as amended; U. S. C. 1940 ed., Title 21, § 381.]

The case has been submitted upon an agreement of counsel that the facts as set forth in the collector's letter of transmittal are not

disputed. Said letter and all the official papers were received in evidence and certain additional facts were stipulated in open court. From the record as thus made up, it appears that the shipments covered by the two entries involved were released from customs custody and delivered to the importer from the wharf on September 15, 1942. Under date of September 18, 1942, the Food and Drug Administration of the Federal Security Agency notified the importer that inspection and analysis of the sample of these nuts showed them to be adulterated within the meaning of section 402 (a) of the Federal Food, Drug, and Cosmetic Act, in that they were decomposed, wormy, etc., and that action to exclude the shipments from consumption would be taken within 3 days, at which time the importer would be given a hearing. On October 2, 1942, the importer was granted permission by said Federal Security Agency to recondition both lots of nuts in one operation by removing the objectionable material for destruction, under customs supervision. The notice granting permission, which was received in evidence as part of the files in the case, further instructed the importer to notify said agency upon completion of the reconditioning process in order that the results might be inspected.

In compliance with this order, the shipments were reconditioned and on June 29, 1943, after inspection, the Federal Security Agency released for consumption 34,155 pounds of Brazil nuts as shown to be of "passable quality"; rejected 6,262 pounds, which were ordered destroyed under customs supervision; and noted that there was a loss of 1,361 pounds in the reconditioning process. Counsel agree that this amount of 1,361 pounds was calculated upon erroneous invoice weights and that the amount based upon actual net weights used in liquidation of the entries should be 1,204 pounds. Plaintiff's counsel limited its claim as to the "lost" merchandise to 1,204 pounds.

On August 5, 1943, the importer was granted permission by the same agency to forward the 6,262 pounds of rejections obtained from the reconditioning process to a New Jersey firm for the purpose of extracting the oil, the resultant product to be used in the manufacture of soap, and the residue obtained from the extraction to be used for cattle feed. It was agreed by counsel that affidavits indicating such use were subsequently filed and the 6,262 pounds were released for that purpose.

The collector subsequently liquidated the entries and assessed duty upon the entire original entered quantity at the rate of 2¼ cents per pound under the provision in paragraph 757, *supra*, for cream or Brazil nuts, shelled.

It is contended on behalf of the plaintiff that in its imported condition that portion of the merchandise consisting of the 6,262 pounds rejected and the 1,204 pounds "lost" in the reconditioning process, are not cream or Brazil nuts within the meaning of the statute; and

that allowance in duty should be granted for said quantity of 7,466 pounds under section 588 (a) (2), *supra*. In support of this claim, plaintiff cites *Kroger Grocery & Baking Co.* v. *United States*, 14 Cust. Ct. 59, C. D. 911, and *Mackay* v. *United States*, 16 Cust. Ct. 67, C. D. 986, affirmed in *United States* v. *Mackay*, 34 C. C. P. A. (Customs) 127, C. A. D. 355. Plaintiff further claims that the 6,262 pounds used for extraction of oil are in any event free of duty under paragraph 1727, *supra*.

The Government claims that as to the 1,204 pounds of "losses" no allowance should be made. This figure represents the difference between the liquidator's total actual net weight of 41,621 pounds for the two shipments at the time of importation, and the total of 40,417 pounds (34,155 pounds released, plus 6,262 pounds rejected) which were in plaintiff's possession as found by the Federal Security Agency's inspectors on June 29, 1943, 9 months subsequent to entry and release from customs custody. It is contended further on behalf of the Government that this amount of 1,204 pounds represents an unexplained loss in weight occurring long after importation and release from customs custody.

Government counsel alleges that the protest does not make claim for any loss in weight, and, further, that even if the protest is sufficient to raise that claim, it should be denied (1) because of the established rule that merchandise is dutiable on the basis of actual net weight at the time of importation; and (2) that the record is lacking in evidence to show that any portion of the said 1,204 pounds was actually destroyed either by the importer, independently, or under supervision of customs or other governmental officers.

As we read the protest, plaintiff's first claim is that the rejected and condemned portion of the importation constituted a nonimportation. The record shows this rejected portion to consist of 6,262 pounds, the reason for its rejection being that it was lacking in purity sufficient to render it fit for use as human food. It was not rejected from entry into this country, but, on the contrary, was released by the Federal Security Agency and actually entered into consumption as an article of commerce in competition with other soap-making fats and cattle feed. Therefore, the cases cited by plaintiff in support of this claim are inapplicable, for in all of those cases the courts held that in order to constitute a nonimportation it is necessary that the evidence show affirmatively that the merchandise involved was completely destroyed to such an extent as to have no commercial value at the time of its arrival in the United States. Under these circumstances, we find no support for plaintiff's claim that the 6,262 pounds constituted a nonimportation not subject to duty, and it is overruled.

In regard to the second claim, i. e., that the 6,262 pounds that were used for soap making and cattle feed were entitled to refund of duties

under section 558 (a) (2), *supra*, the record is lacking in proof that this quantity was either exported or destroyed "after * * * release from the custody of the Government" as therein provided. The question of exportation is not involved. The term "destroy" as used in the tariff sense, has been construed by the courts to mean complete destruction as an article of commerce. In the case of *American Gas Accumulator Co.* v. *United States*, 56 Treas. Dec. 368, T. D. 43642, the court held that certain drums so badly damaged, as a result of their use for experimental purposes, as to be salable only for scrap were not "destroyed" for tariff purposes. This ruling is in line with the decisions in *Lawder* v. *Stone*, 187 U. S. 281; *United States* v. *Pastene*, 3 Ct. Cust. Appls. 164, T. D. 32458; and *Poole* v. *United States*, 9 Ct. Cust. Appls. 271, T. D. 38216. In those cases it was held that total destruction rendering an article utterly worthless is necessary to render an article nondutiable. The 6,262 pounds of adulterated Brazil nuts here involved were not rendered worthless after release by the Federal Security Agency. In fact, they were made salable by the process of separating the oil for soap making and the residue for cattle feed. Under such circumstances, it cannot be said that they were destroyed in a tariff sense, and we find that section 558 (a) (2), *supra*, is inapplicable.

The reasoning in the case of *Boston Brokerage Co.* v. *United States*, 22 C. C. P. A. (Customs) 461, T. D. 47454, is in point here. That case involved decayed figs, which were ordered detained by the Department of Agriculture as unfit for human consumption, but which did enter the commerce of the United States before the Government authorities were able to seize and destroy them. The court upheld the assessment of duty upon the figs which had entered the commerce of this country, saying:

* * * it would be inequitable and presumably not within the intention of Congress to refrain from assessing duty upon goods which should have been destroyed or exported, but which in fact had entered into the commerce of the United States.

As to the 1,204 pounds of nuts which are described as "lost" in the reconditioning process, we find no evidence as to what caused this loss in weight, or what disposition was made of the merchandise represented thereby. The only indication of such a loss in weight is contained in the statement in the notice of the Federal Security Agency that their inspection after the goods had been reconditioned by the importer, indicated a "loss * * * in the reconditioning process." The mere statement in said notice is not competent evidence to establish how the loss occurred, what caused it, or what disposition was made of the lost material. An examination of the opinions in the cases cited by counsel for the plaintiff as authority for allowance in duties on this quantity of "lost" merchandise will sufficiently indicate that they

are distinguishable from the instant case. In *Kroger Grocery & Baking Co.* v. *United States, supra,* and the *Mackay* case, *supra,* affirmative evidence was introduced which established that the merchandise there in question actually had been destroyed or exported under customs supervision. In the instant case such evidence is lacking. In the absence of such proof, we find that the claim for allowance in duties on the said 1,204 pounds should be and the same is hereby overruled.

There remains to be considered the question of whether the 6,262 pounds of nuts which were rejected in the reconditioning process and later used for extraction of oil, are properly dutiable as cream or Brazil nuts within the purview of the *eo nomine* provision therefor in paragraph 757, *supra,* as assessed, or whether that portion of the shipment is entitled to free entry under the provision in paragraph 1727, *supra,* for—

\* \* \* nuts, not specially provided for, when the oils derived therefrom are free of duty.

Plaintiff claims that portion of the merchandise is excluded from the provision for Brazil nuts because that term contemplates edible nuts, and that this merchandise in its imported condition was unfit for food, was contaminated, and was ordered destroyed. Therefore, it is contended that it lost its character as Brazil nuts and when used for extraction of oil, became for commercial purposes oil-bearing nuts. In considering this phase of the case, it must first be determined whether the merchandise falls within the term "nuts, not specially provided for." It is clear that the record shows this portion of the importations consisted of damaged nuts of a species commonly known as "Brazil nuts." The *eo nomine* provision in paragraph 757, *supra,* contains no qualifying terms; therefore, although damaged, the commodity remained Brazil nuts and cannot be held to be some other species of nut. This holding is in line with numerous decisions involving merchandise of inferior quality which nevertheless has been held not to be removed from specific provisions in tariff laws, without a qualifying provision with reference to grade or degree of purity. See *Bush & Co.* v. *United States,* 12 Ct. Cust. Appls. 22, T. D. 39894, wherein it was held that damaged rice is nevertheless rice. To the same effect, see *Wagner* v. *United States,* 3 Cust. Ct. 102, C. D. 212. In the case of *Merck & Co.* v. *United States,* 24 Treas. Dec. 824, T. D. 33463, G. A. 7464, the Board of General Appraisers (now the U. S. Customs Court) held that certain coffee which was found not to comply with the pure food laws of the United States nevertheless was coffee for tariff purposes.

It has been held on numerous occasions that—

*. * * where a dutiable provision names an article without terms of limitation all forms of the article are thereby included unless a contrary legislative intent otherwise appears; * * *.

See *Smillie & Co.* v. *United States*, 11 Ct. Cust. Appls. 199, T. D. 38966; *Arthur* v. *Rheims*, 96 U. S. 143, 144; *Chew Hing Lung* v. *Wise*, 176 U. S. 156, 160; *Neuman* v. *United States*, 4 Ct. Cust. Appls. 64, T. D. 33310; *Brown* v. *United States*, 6 Ct. Cust. Appls. 415, T. D. 35977; *Tower* v. *United States*, 11 Ct. Cust. Appls. 157, 162, T. D. 38948; *Maine Central Railroad Co.* v. *United States*, 14 Ct. Cust. Appls. 411, T. D. 42054; and *Nootka Packing Co. et al.* v. *United States*, 22 C. C. P. A. (Customs) 464, T. D. 47464.

It is therefore apparent that the 6,262 pounds of nuts were, at the time of importation, damaged Brazil nuts, and as such were properly assessed for duty by the collector at the rate of 2¼ cents per pound under the *eo nomine* provision therefor in paragraph 757, as modified, *supra*.

For the reasons above set forth, all of plaintiff's claims are overruled.

Judgment will be rendered for the defendant.