(C. D. 1204)

C. J. Tower & Sons *v.* United States

United States Customs Court, Third Division

(Decided January 24, 1950)

*Barnes, Richardson & Colburn (Joseph Schwartz* and *Edward N. Glad* of counsel) for the plaintiff.

*David N. Edelstein,* Assistant Attorney General (*Dorothy C. Bennett,* special attorney), for the defendant.

Before Cline, Ekwall, and Johnson, Judges

Cline, Judge: This is a protest, arising at the port of Buffalo, against the collector's assessment of duty on wet and burned grain imported from Canada. In two of the entries the merchandise consisted of commingled wheat, oats, and barley, and in the third entry it consisted of oats and barley. The merchandise was not segregated, and duty was assessed pursuant to section 508 of the Tariff Act of 1930 at the highest rate applicable to any part thereof, namely, 15 cents per bushel of 48 pounds under paragraph 722, as modified by the trade agreement with Canada, T. D. 49752, as barley. Plaintiff claims that the merchandise is properly dutiable under paragraph 731, as modified by said trade agreement, as scalpings or by similitude to scalpings, or under paragraph 1558 as a nonenumerated unmanufactured article, or free of duty under paragraph 1722 as a crude vegetable substance.

The pertinent provisions of the tariff act are as follows:

Par. 722 [as modified by the trade agreement with Canada, T. D. 49752]. Barley, hulled or unhulled, 15¢ per bushel of 48 pounds.

Par. 726 [as modified by the trade agreement with Canada, T. D. 49752]. Oats, hulled, or unhulled, 8¢ per bushel of 32 pounds.

Par. 729 [as modified by the trade agreement with Canada, T. D. 49752]. Wheat, unfit for human consumption, 5% ad val.

Par. 731 [as modified by the trade agreement with Canada, T. D. 49752]· Screenings, scalpings, chaff, or scourings of wheat, flaxseed, or other grains or seeds: Unground or ground, 5% ad val.

PAR. 1558. That there shall be levied, collected, and paid on the importation of all raw or unmanufactured articles not enumerated or provided for, a duty of 10 per centum ad valorem, * * *.

PAR. 1559. That each and every imported article, not enumerated in this Act, which is similar, either in material, quality, texture, or the use to which it may be applied to any article enumerated in this Act as chargeable with duty, shall be subject to the same rate of duty which is levied on the enumerated article which it most resembles in any of the particulars before mentioned; * * *.

PAR. 1722 [Free]. Moss, seaweeds, and vegetable substances, crude or unmanufactured, not specially provided for.

SEC. 508. COMMINGLING OF GOODS.

Whenever dutiable merchandise and merchandise which is free of duty or merchandise subject to different rates of duty are so packed together or mingled that the quantity or value of each class of such merchandise can not be readily ascertained by the customs officers, the whole of such merchandise shall be subject to the highest rate of duty applicable to any part thereof, unless the importer or consignee shall segregate such merchandise at his own risk and expense under customs supervision within ten days after entry thereof, in order that the quantity and value of each part or class thereof may be ascertained.

It appears from the official papers that the examiners returned the merchandise as dutiable under paragraph 731 as scalpings by virtue of the similitude clause in paragraph 1559. Their reports describe the merchandise as follows:

Entry No. 932—The importation consisted of a mixture of fireburnt & water-soaked wheat, oats & barley.

Entry No. 619—The importation consisted of a mixture of fireburnt & water-soaked oats & Barley.

Entry No. 1829—Animal feed consisting of wet and discolored, wheat, oats and barley.

However, the collector assessed duty under paragraph 722 as stated above.

A sample of the merchandise taken from entry No. 619 was received into evidence as plaintiff's exhibit 1 and there was testimony that it was similar in appearance to the other two shipments. It appears to consist of oats (many of which are discolored) barley, and foreign matter.

At the trial, Edward Douglas Sullivan, senior partner of Sullivan & Kennedy, the exporter herein, testified that the merchandise had been stored at the Dewart Milling Co., Peterboro, Ontario; that there were three storage tanks at said mill, consisting of circular concrete tanks about 35 feet high and 10 feet in circumference; that just one kind of grain was stored in each tank; that in July 1946, wheat was stored in one tank, oats in another, and barley in the third; that a fire occurred in the top of one tank; that an enormous amount of water was used in trying to put out the fire; that the water spread into the grain; that water was poured over the other tanks to keep them cool; that holes were cut in the bottoms of all the tanks to get the grain out and all the grain became damaged by water, smoke,

and fire; that all the grain was mixed together on a pile; and that later whatever could be salvaged from the pile was loaded into railroad cars for shipment.

Mr. Sullivan stated that the grain was offered to him by a representative of Dewart Milling Co. on sample; that the sample contained wheat, oats, and barley; that it was badly damaged by water, had a smoky smell, contained pieces of charred grain, and was on the verge of becoming heated and musty; that it was not fit for human consumption, nor was it fit for animal feed in that condition, but would have to be mixed with something else; that he sold the merchandise to a class of buyers called "mixers," who buy any kind of wheat, oats, barley, or corn for animal consumption, grind them together, and resell the mixture. He also stated that he inspected the carloads of grain when they arrived; that the merchandise was not nearly as good in quality as the original sample which had been submitted; that the grains were not in the same proportions in each carload; that the samples from the cars were damp, on the verge of being musty, and contained large lumps of moldy grain.

The witness testified that he would sell such merchandise only on sample because the grain was in an unsound condition; but that if after the sample was produced, the purchaser was willing to accept the merchandise as wheat, oats, or barley, he would sell it as such.

Mr. Sullivan then testified that he was familiar with screenings and scalpings; that screenings consisted of the material remaining after cleaning grain that is adulterated with seeds and other foreign matter; that scalpings are wild oats cleaned from wheat and barley; that none of the grain in the entries herein had been processed in the manner required to produce screenings and scalpings; that the merchandise herein could not be put in the same category as screenings and scalpings because screenings and scalpings are different from wheat, oats, and barley; that because it had been damaged, it was in the same category as to use; that screenings and scalpings are used as a base in a feed mixture in place of high-priced grains to reduce the cost; that the merchandise herein would be used for the same purpose; that this merchandise had a higher food value than refuse screenings; that it was necessary to mix sound sweet grains with these heated and musty grains in order to make the feed palatable.

Hubert F. Schmitz, customs examiner, testified that he saw samples of the merchandise involved in entry No. 1829; that it was an animal feed consisting of wet and discolored wheat, oats, and barley; that the merchandise was similar to scalpings in that it contained quite a bit of foreign matter, foreign seeds, and some wild oats; that the sample is higher in oat value than the ordinary run of scalpings; that the sample in no way resembles barley; that he advisorily classified the mer-

chandise under paragraph 731 by virtue of the similitude clause in paragraph 1559.

Edward Cohen, customs examiner, testified that he made the advisory classification of entry No. 932; that the merchandise consisted of a mixture of fire-burned and water-soaked wheat, oats, and barley; that he returned it under paragraph 731; that the merchandise was somewhat similar to scalpings; that plaintiff's exhibit 1 is neither barley, wheat, nor oats, but that it contains all three.

Plaintiff claims that the merchandise herein had been so damaged by fire, water, and smoke that it was no longer grain; that it was similar to scalpings and therefore dutiable as such by virtue of the similitude clause in paragraph 1559. It is uncontradicted that before the fire occurred the merchandise consisted of wheat, oats, and barley, and not scalpings or screenings. The primary question, therefore, is whether the damage was such that the merchandise became something other than wheat, oats, and barley.

The evidence establishes that such merchandise would be bought and sold only on sample; that it could not be used for animal feed without being mixed with sound grains to make it palatable; that it had a higher food value than refuse screenings; that it contained more oats than screenings. It appears from the sample, plaintiff's exhibit 1, that the merchandise still consisted of whole grains recognizable as oats and barley.

It has been held that a damaged article is dutiable under the *eo nomine* provision for that article. *Schade* v. *United States*, 5 Ct. Cust. Appls. 465, T. D. 35002; *Atwood-Stone Co.* v. *United States*, 5 Ct. Cust. Appls. 472, T. D. 35004; *Tower & Sons* v. *United States*, 11 Ct. Cust. Appls. 489, T. D. 39629; *Bush & Co. (Inc.)* v. *United States*, 12 Ct. Cust. Appls. 22, T. D. 39894; *C. J. Tower & Sons* v. *United States*, 36 Treas. Dec. 609, Abstract 42873; *H. A. Johnson Co.* v. *United States*, 21 Cust. Ct. 56, C. D. 1127.

In *Schade* v. *United States, supra,* the merchandise consisted of badly frosted wheat which was sold on sample only. It was held that the importation fell within the common ordinary designation of "wheat," although of an inferior quality and suitable for use as feed only. The court said (p. 466):

* * * The term [wheat] is used in the tariff law without limitation, and, therefore, the court is bound to hold included therewithin for dutiable classification in the absence of an established trade usage every kind and description of wheat.

While the evidence establishes that the within merchandise was sold on sample, it does not establish that it was generally bought and sold as something other than wheat, oats, and barley.

In *Atwood-Stone Co.* v. *United States, supra,* there was involved wheat which had been "bin burned" by reason of being stored in a

damp condition. Fermentation had set in, shriveling the grain and giving it an unpleasant odor, and it had been subjected to a process of dry heating to check further deterioration. As a result, the grains were discolored and made useless for the manufacture of flour. The court held that the merchandise was dutiable as wheat, stating (p. 473):

* * * With the exception that the grains were slightly shriveled, they retained, however, the characteristic form and all the physical constituents peculiar to wheat. Some of the corporeal elements of the cereal were unquestionably impaired by storing it while damp. The germinating principle in a large percentage of the grains and the elastic entangling characteristics of the gluten were certainly destroyed by the dry-heat treatment to which the product was subjected in order to stop fermentation. Nevertheless, the impairment of the physical components of the wheat and the destruction of the principle which made it available as seed affected the quality, not the essence, of the article, and it can not be said that either factor or both together destroyed the wheat or evolved something new which was not wheat.

In the instant case also the grains are discolored and shriveled, but they retain the form of wheat, oats, and barley. There is no evidence as to whether or not the germinating principle was affected. There is nothing to show that something new was evolved that was not wheat, oats, or barley.

In *H. A. Johnson Co.* v. *United States, supra*, it was held that Brazil nuts, decomposed, wormy, and unfit for human consumption, were dutiable as Brazil nuts. The court said:

* * * It is clear that the record shows this portion of the importations consisted of damaged nuts of a species commonly known as "Brazil nuts." The *eo nomine* provision in paragraph 757, *supra*, contains no qualifying terms; therefore, although damaged, the commodity remained Brazil nuts and cannot be held to be some other species of nut.

In the instant case the grains, although damaged, remained wheat, oats, and barley, and cannot be held to be some other species of commodity, namely, scalpings.

Plaintiff attempts to distinguish the cases of *Schade* v. *United States, supra*, and *Tower & Sons* v. *United States*, 11 Ct. Cust. Appls. 489, T. D. 39629, on the ground that the wheat therein was bought and sold as wheat. In the instant case Mr. Sullivan testified:

Q. Referring to that sample, was it sound wheat, oats, and barley?—A. No.

Q. Was it merchandise that you would accept on an order for wheat, oats, and barley?—A. No.

Q. Was it merchandise that you would sell as wheat, oats, and barley?—A. Only on sample.

Q. What do you mean by that?—A. You would have to submit a sample to your prospective buyer and then guarantee to deliver him goods equal to that sample.

* * * * * * *

X Q. * * * Do you mean by that that if the sample were produced to your purchaser and he was willing to accept it as wheat, oats or barley, you would have sold it as such?—A. If he were willing to accept it; yes.

This indicates that the merchandise had to conform to sample, not that it was sold as something other than wheat, oats, or barley.

It has long been held that screenings and scalpings are a separate and distinct commodity classifiable as such. *Williamson* v. *United States*, 8 Ct. Cust. Appls. 277, T. D. 37538; *C. J. Tower & Sons* v. *United States*, 52 Treas. Dec. 296, T. D. 42452; *C. S. Emery & Co.* v. *United States*, 19 Cust. Ct. 16, C. D. 1061, and cases there cited. The merchandise herein does not conform to the description of screenings or scalpings contained in these cases or in the Summary of Tariff Information, 1929, p. 1218. It cannot be classified as screenings or scalpings by virtue of the similitude clause because it consisted of wheat, oats, and barley, and such commodities are *eo nomine* provided for. The similitude clause applies only to unenumerated articles. *Moscahlades Bros.* v. *United States*, 13 Ct. Cust. Appls. 633, T. D. 41482.

Since the importer did not segregate the different grains in these importations and since it is not claimed that the collector should have done so, nor is there any evidence that they were readily segregable, we hold that the collector properly assessed duty on the entire quantity at the highest rate applicable to any part thereof pursuant to the provisions of section 508 of the Tariff Act of 1930, namely, 15 cents per bushel of 48 pounds under paragraph 722, as modified by the trade agreement with Canada, T. D. 49752. The protest is overruled and judgment will be rendered accordingly.